AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
4/28/2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      VYC      DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

T-Mobile (Purple and Black With Case)
Model: REVVL V+ 5G
IMEI: 357492495952069

Case No. 22MJ8300

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Robert Daltorio incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Robert Daltorio
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means)*.

Date: April 28, 2022

*Judge's signature*

City and state: San Diego, California     HON. MICHAEL S. BERG, U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

    T-Mobile (Purple and Black With Case)
    Model: REVVL V+ 5G
    IMEI: 357492495952069
    Seized from Neris Eduardo BONILLA-Portillo
    **(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 13, 2022, up to and including April 13, 2022, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Robert Daltorio, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>T-Mobile (Purple and Black With Case)
>Model: REVVL V+ 5G
>IMEI: 357492495952069
>Seized from Neris Eduardo BONILLA-Portillo
>**(Target Device #1)**

>Motorola (Blue With Pink Case)
>Model: MOTO G MC36E
>IMEI: 351647112977387
>Seized from Nelsin Marisela CONTRERAS-Juarez
>**(Target Device #2)**

>Samsung (Black With Case)
>Model: A30
>Serial Number: R58N31NT1MH
>Seized from Jabin GONZALEZ-Gomez
>**(Target Device #3)**

>LG (GRAY)
>Model: Tribute Royal
>IMEI: 357923101971102
>Seized from Sandra JUAREZ-Hernandez
>**(Target Device #4) (collectively, "Target Devices")**

as further described in Attachments A-1, A-2, A-3 and A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Neris Eduardo BONILLA-Portillo (BONILLA) and Nelsin Marisela CONTRERAS-Juarez

1

(CONTRERAS) for transportation of illegal aliens Jabin GONZALEZ-Gomez and Sandra JUAREZ-Hernandez (collectively, the "Material Witnesses") in violation of 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from BOILLA, CONTRERAS, GONZALEZ and JUAREZ on or about April 12, 2022, incident to their arrests. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent (BPA) with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since December 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 24-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

2

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On April 12, 2022, BPA E. Rivera-Toledo was assigned to the operational United States Border Patrol Checkpoint on Highway 111 near Niland, California. BPA Rivera-Toledo was performing primary inspection duties for immigration inspection purposes. At approximately 8:55 p.m., BPA Rivera-Toledo was working the primary inspection area when a blue 2018 Toyota Camry bearing Colorado plates approached the primary inspection area. As the vehicle approached primary, BPA Rivera-Toledo motioned the driver to come to a stop for an immigration inspection. Agent Rivera-Toledo identified himself as a United States Border Patrol Agent and questioned the driver, later identified as BONILLA, as to his citizenship. BONILLA stated in the English language that he was a United States citizen. BPA Rivera-Toledo then asked BONILLA if the rest of the occupants in the vehicle were U.S. citizens and he replied: "Yes." While BPA Rivera-Toledo asked if they had any immigration documentation, he also noticed a front seat passenger and one toddler sitting in her respective car seat in the rear seat along with male and female adult passengers.

11. BPA Rivera-Toledo questioned the front passenger as to her citizenship to which she presented a Social Security Card but was not in possession of any other identification documents. BPA Rivera-Toledo asked BONILLA about the child and BONILLA stated the child was CONTRERAS' child and that she was born in the United States. BPA Rivera-Toledo then looked at the occupants sitting in the back seat and noticed them avoiding eye contact when asked about their immigration status. BPA Rivera-Toledo asked BONILLA again for his immigration documentation and BONILLA looked at CONTRERAS as if he was waiting for her to look for them. At this time, BPA Rivera-Toledo noticed a commercial truck approaching his position at primary. Agent Rivera-Toledo then asked the driver to park his vehicle at the secondary inspection area in order

5

to complete an immigration inspection of all occupants in the vehicle. BONILLA agreed and proceeded to move to the secondary area.

12. The commercial truck arrived at primary inspection at the checkpoint and Agent Rivera-Toledo started questioning the truck driver when he noticed the Toyota started slowly moving away from the parking spot in the secondary area and began following the white line on the road before quickly speeding away from the checkpoint at a high rate of speed. BPA Rivera-Toledo transmitted over the radio that the Toyota was taking off from the secondary inspection area and was headed northbound on Highway 111. Other Agents nearby acknowledged over the radio and started heading northbound. All units were cleared from the checkpoint to catch up to the fleeing Toyota.

13. Agents were able to locate the Toyota on Highway 111 north of the Imperial County Line near North Shore, California. When Agents arrived at the location, they noticed the Toyota had gone off the highway and crashed into the desert landscape. BPA P. Smith arrived on scene, identified himself as a BPA and questioned the individuals as to their citizenship. After brief questioning, it was determined that both BONILLA and CONTRERAS were citizens of Honduras. BPAs questioned the passengers of the vehicle and it was determined that Jabin GONZALEZ-Gomez (GONZALEZ) is a citizen of Mexico without documents that would allow him to be in the United States legally, and Sandra JUAREZ-Hernandez (JUAREZ) is a citizen of Honduras without documents that would allow her to be in the United States legally. The four individuals were placed under arrest and were transported to the Highway 111 Border Patrol checkpoint for processing and further interviews.

14. During an inventory search, a purple and black T-Mobile Revvl V+5G smart phone (Target Device #1) was discovered on BONILLA's person. A blue Motorola Moto G Play (Target Device #2) was discovered on CONTRERAS'. A black Samsung Galaxy A30 smart phone (Target Device #3) was discovered on Material Witness GONZALEZ's person and a grey LG Tribute Royal smart phone (Target Device #4) was discovered on

Material Witness JUAREZ's person. All cell phones were seized as per seizure guidelines and for evidence.

15. Material Witnesses JUAREZ and GONZALEZ were presented with six-pack photo lineup and were both able to positively identify BONILLA as the driver of the vehicle. Both Material Witnesses stated they were going to pay between $1,000 and $1,500 to be smuggled into the United States.

16. Based upon my experience and investigation in this case, I believe that BONILLA, CONTRERAS, the Material Witnesses, and other persons, as yet unknown, were involved in an alien smuggling venture and that BONILLA, CONTRERAS and the Material Witnesses used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

17. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on March 13, 2022, up to and including April 13, 2022, the day after the arrests of BONILLA and CONTRERAS.

## METHODOLOGY

18. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that BONILLA, CONTRERAS and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by BONILLA, CONTRERAS, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Robert W. Daltorio*
Robert Daltorio, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 28th day of April, 2022.

HON. MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

>T-Mobile (Purple and Black With Case)
>Model: REVVL V+ 5G
>IMEI: 357492495952069
>Seized from Neris Eduardo BONILLA-Portillo
>**(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

>Motorola (Blue With Pink Case)
>Model: MOTO G MC36E
>IMEI: 351647112977387
>Seized from Nelsin Marisela CONTRERAS-Juarez
>**(Target Device #2)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

    Samsung (Black With Case)
    Model: A30
    Serial Number: R58N31NT1MH
    Seized from Jabin GONZALEZ-Gomez
    **(Target Device #3)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

>LG (GRAY)
>Model: Tribute Royal
>IMEI: 357923101971102
>Seized from Sandra JUAREZ-Hernandez
>**(Target Device #4)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 13, 2022, up to and including April 13, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.